IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Diversified Energy Company PLC, et al.,** | Case No. 1:23mc00031 |
| Plaintiffs, | JUDGE PAMELA A. BARKER |
| -vs- | |
| **Institute for Energy Economics and Financial Analysis,** | MEMORANDUM OPINION AND ORDER |
| Defendant | |

Currently pending is the Motion of Diversified Energy Company PLC, Diversified Production LLC, and Diversified Gas & Oil Corporation (hereinafter referred to collectively as "Diversified") to Compel Compliance with a Subpoena issued to the Institute for Energy Economics and Financial Analysis ("IEEFA"). (Doc. No. 1.) In response, IEEFA filed a Motion to Transfer Pursuant to Fed. R. Civ. P. 45(f) or, in the Alternative, for Leave to File a Motion to Quash and a Brief in Opposition to Diversified's Motion to Compel. (Doc. No. 9.) Diversified filed a Brief in Opposition to IEEFA's Motion, to which IEEFA replied. (Doc. Nos. 11, 12.)

For the following reasons, IEEFA's Motion to Transfer (Doc. No. 9) is GRANTED, as set forth herein.

**I.       Background**

This matter involves a Subpoena issued by Diversified to IEEFA in connection with the matter of *McEvoy v. Diversified Energy Company, PLC*, Case No. 5:22CV00171- JPB (N.D. W.Va.). In *McEvoy*, the plaintiffs filed a Class Action Complaint in the United States District Court for the Northern District of West Virginia on July 8, 2022 against numerous defendants, including

Diversified. As the district court in that case explained, the *McEvoy* case "stems from thousands of abandoned gas wells in West Virginia that plaintiffs allege Diversified Defendants had a duty to plug and decommission." *McEvoy*, Case No. 5:22CV00171 (N.D. W.Va.) (Doc. No. 204.) It also involves "alleged fraudulent transfers made between Diversified Defendants and EQT Defendants." (*Id*.) The *McEvoy* plaintiffs assert claims for trespass (Count I), negligence (Count II), and "avoidance of recovery of a voidable transfer as the result" of an actual or constructive fraudulent transfer (Counts III and IV). (*Id*.) *See also Id*. at Doc. No. 322. [1]

The *McEvoy* plaintiffs' Third Amended Complaint makes numerous references to a report entitled "Diversified Energy: A Business Model Built to Fail Appalachia," which was published in April 2022 by the Ohio River Valley Institute and authored by Ted Boettner, Kathy Hipple, and Anthony Ingraffea (hereinafter referred to as "the Boettner Report."). *See, e.g., McEvoy*, Case No. 5:22CV00171 (N.D. W. Va.) (Doc. No. 322 at ¶¶ 42-82, 97.) The Boettner Report is attached as an Exhibit to the *McEvoy* plaintiffs' Third Amended Complaint. In its "Acknowledgements" section, the Boettner Report provides, in relevant part, that "[t]he authors also thank Clark Williams-Derry with the [IEEFA] . . . for the invaluable feedback on drafts of the report." (*Id*. at Exh. A. to Doc. No. 322 at p. 1.)

On April 28, 2023, Diversified served a Subpoena on IEEFA, which is located in Lakewood, Ohio. (Doc. No. 1-2.) The Subpoena was issued by the Northern District of West Virginia and commands IEEFA to produce documents responsive to the following twelve (12) requests:

1. Documents related to the [Boettner report].

---

[1] The *McEvoy* plaintiffs' Third Amended Complaint is also attached as an Exhibit to Diversified's Brief in Opposition to IEEFA's Motion to Transfer Venue. *See* Doc. No. 11-2. The Northern District of West Virginia recently denied without prejudice Diversified's Motion to Dismiss the *McEvoy* Plaintiffs' Third Amended Complaint. *See, McEvoy,* Case No. 5:22CV00171 (N.D. W. Va.) (Doc. No. 362.)

2. Communications discussing or otherwise related to the [Boettner Report.]

3. Communications discussing or otherwise related to Ted Boettner, Kathy Hipple, and Anthony Ingraffea from July 1, 2016 to present.

4. Communications with Ted Boettner about Diversified or the above-captioned matter from July 1, 2016 to present. To the extent you claim any such communications are privileged, please provide a privilege log regarding the same.

5. Communications with Kathy Hipple or the Ohio River Valley Institute about Diversified or the above-captioned matter from July 1, 2016 to present. To the extent you claim any such communications are privileged, please provide a privilege log regarding the same.

6. Communications with Luke Plants or Plants & Goodwin, Inc. about Diversified or the above-captioned matter from July 1, 2016 to present. To the extent you claim any such communications are privileged, please provide a privilege log regarding the same.

7. Communications with members or employees of the Appalachian Mountain Advocates about gas wells in West Virginia, Diversified,2 or the above-captioned matter from July 1, 2016 to present. To the extent you claim any such communications are privileged, please provide a privilege Jog regarding the same.

8. Communications with Brian A. Glasser, John W. Barrett, or other attorney at Bailey & Glasser, LLP about gas wells in West Virginia, Diversified, or the above-captioned matter from July 1, 2016 to present. To the extent you claim any such communications are privileged, please provide a privilege log regarding the same.

9. Documents and communications in your possession, custody, or control regarding Diversified or any of its gas wells in West Virginia from July 1, 2016 to the present.

10. Documents and communications regarding the July 2018 or May 2020 transactions between Diversified and EQT referenced in the Second Amended Class Action Complaint in the above-captioned matter.

11. Documents and communications regarding any of the Plaintiffs in the above-captioned matter from July 1, 20I6 to present.

12. Documents evidencing any payments received by you from Appalachian Mountain Advocates and/or Ohio River Valley Institute, and/or Bailey and Glasser, LLP, and/or the Sierra Club, for the past five (5) years.

(Doc. No. 1-2) (footnotes omitted). On May 15, 2023, IEEFA responded to Diversified's Subpoena by raising numerous objections, including that Diversified's document requests were overly broad and unduly burdensome. (Doc. No. 9-1 at PageID#s 204-207.)

Subsequently, on June 6, 2023, the Northern District of West Virginia issued an Order sustaining Objections raised by the Sierra Club to a Subpoena served on it by Diversified ("the Sierra Club Subpoena"). (Doc. No. 9-2.) The Sierra Club Subpoena (Doc. No. 9-3) is substantially similar to the Subpoena issued by Diversified to IEEFA. The district court found that "the requests by Diversified are not relevant to any of the issues in the case, are not proportional to the needs of the case, and taking the time, money, and resources to respond would place an undue burden on Sierra Club." (Doc. No. 9-2.) Diversified filed a motion to reconsider, which the district court denied. (*Id.*)

Counsel for IEEFA thereafter emailed counsel for Diversified, requesting that Diversified withdraw the Subpoena to IEEFA in light of the district court's ruling on the Sierra Club Subpoena. (Doc. No. 9-1 at PageID# 208.) Diversified declined to do so.

On July 18, 2023, the Northern District of West Virginia issued an Order quashing a Subpoena issued by Diversified to David McMahon, J.D ("the McMahon Subpoena"). (Doc. No. 9-4.) The McMahon Subpoena (Doc. No. 9-5) is also substantially similar to the Subpoena issued by Diversified to IEEFA. In its Order, the district court found as follows: "Here, any production by Mr. McMahon would impose an undue burden. Mr. McMahon is a non-party and not counsel of record. The subpoena requests documents and communications from numerous people, starting July 1, 2016 to the present - ALL documents and communications. The burden or expense of compliance with the subpoena outweighs any likely benefit to defendants' counsel." (Doc. No. 9-4.)

Meanwhile, on July 17, 2023, Diversified filed the instant Motion to Compel in this Court. (Doc. No. 1.) The following day, this Court ordered counsel for the parties to meet and confer to attempt to reach a resolution. *See* Non-Doc Order dated July 18, 2023. The Court further ordered that "[i]f the parties are unable to fully resolve their dispute through the meet and confer process, IEEFA shall file a response to Diversified's Motion to Compel by no later than August 1, 2023." (*Id*.) On July 25, 2023, Diversified filed a Status Report indicating that the parties met and conferred but were unable to resolve their dispute. (Doc. No. 8.)

On July 31, 2023, IEEFA filed a Motion to Transfer to the Northern District of West Virginia or, in the alternative, for leave to file a Motion to Quash and Brief in Opposition to Diversified's Motion to Compel. (Doc. No. 9.) Diversified filed a Brief in Opposition to IEEFA's Motion, to which IEEFA replied. (Doc. Nos. 11, 12.)

## II. Legal Standard

Federal Rule of Civil Procedure 45(f)[2] provides as follows:

> **(f) Transferring a Subpoena-Related Motion.** When the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances. Then, if the attorney for a person subject to a subpoena is authorized to practice in the court where the motion was made, the attorney may file papers and appear on the motion as an officer of the issuing court. To enforce its order, the issuing court may transfer the order to the court where the motion was made.

---

[2] Federal Rule of Civil Procedure 45 provides a mechanism for parties to an action to obtain discovery, including production of documents and deposition testimony, from a nonparty. *See Kennedy v. Caruso*, 2020 WL 2815137 at * 1 (M.D. Tenn. May 5, 2020), *report and recommendation adopted by* 2020 WL 2812825 (M.D. Tenn. May 29, 2020). A subpoena under Rule 45 "must issue from the court where the action is pending." Fed. R. Civ. P. 45(a)(2). A person seeking to enforce or challenge a subpoena must do so in "the court for the district where compliance is required." Fed. R. Civ. P. 45(d)(3)(A). Here, the instant subpoena to IEEFA was issued by the United States District Court for the Northern District of West Virginia. IEEFA, however, is located in this District. Because compliance is required in this District, Diversified filed the instant action in this Court.

In evaluating whether there are "exceptional circumstances" warranting transfer, "[t]he prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions." Advisory Committee Notes, Fed. R. Civ. P. 45 (2013 Amendments). However, in some circumstances, transfer may be warranted "in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts." *Id.* Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion. *Id. See also Parker Compound Bows, Inc. v. Hunter's Manufacturing Co., Inc.*, 2015 WL 7308655 at * 1 (N.D. Ohio Nov. 19, 2015).

The proponent of transfer bears the burden of showing that extraordinary circumstances are present. *See* Advisory Committee Notes, Fed. R. Civ. P. 45 (2013 Amendments). In determining whether transfer is appropriate under Rule 45(f), federal courts have considered a number of factors, including "'case complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation.'" *Parker Compound Bows, Inc.,* 2015 WL 7308655 at * 1 (quoting *Judicial Watch, Inc. v. Valle Del Sol, Inc.*, 307 F.R.D. 30, 34 (D.D.C. 2014)). *See also e.g., Fed. Home Loan Mortgage Corp. v. Deloitte & Touche LLP*, 309 F.R.D. 41, 44 (D.D.C.2015). The decision of whether to transfer is discretionary. *See, e.g., Federal Trade Commission v. A+ Financial Center, LLC,* 2013 WL 6388539 at * 2-3 (S.D. Ohio Dec. 6, 2013); *Moon Mountain Farms LLC v. Rural Community Insurance Co*., 301 F.R.D. 426, 429 (N.D. Cal. 2014).

**III.     Analysis**

IEEFA argues that transfer is warranted under Fed. R. Civ. P. 45(f) for several reasons. (Doc. No. 9.) First, IEEFA emphasizes that it consents to the transfer of Diversified's Motion to Compel to the Northern District of West Virginia. (*Id*. at p. 4.) Citing several district court cases, IEEFA asserts that this alone is sufficient to warrant a transfer under the clear language of Rule 45(f). (*Id*.) Second, IEEFA argues that exceptional circumstances warrant a transfer. (*Id.* at pp. 4-7.) IEEFA maintains that the Northern District of West Virginia has already ruled on nearly identical discovery requests in the context of the Sierra Club and McMahon subpoenas. (*Id*.) Thus, IEEFA asserts, transferring Diversified's Motion would alleviate the risk of inconsistent rulings and promote judicial economy. (*Id*.) IEEFA further argues that the Northern District of West Virginia is in a better position to rule on Diversified's Motion given its familiarity with the issues involved. (*Id*.)

In response, Diversified argues that "this Court should not exercise its discretion to transfer because IEEFA has not (and cannot) meets its burden of showing that exceptional circumstances exist." (Doc. No. 11 at p. 3.) Diversified maintains that "[d]enying transfer does not risk inconsistent rulings; resolution of Diversified's Motion does not require the expertise of the issuing court; and denying transfer would not risk disrupting the Northern District of West Virginia's management of the underlying McEvoy litigation." (*Id.*) Lastly, Diversified asserts that transferring the case would not serve the interests of judicial economy because it is possible that the issuing court would have to retransfer the matter back to this Court for enforcement of any Orders that may be issued relative to the IEEFA Subpoena.[3] (*Id*. at p. 4.)

---

[3] Diversified also argues that IEEFA's Motion is improper because IEEFA failed to either (1) discuss its intent to seek a transfer during the parties' meet and confer; or (2) file a Brief in Opposition to Diversified's Motion to Compel, as required by this Court's July 18, 2023 Order. (Doc. No. 11 at p. 2.) The Court finds these arguments to be without merit.

7

For the following reasons, the Court concludes, in the exercise of its discretion, that transfer of Diversified's Motion to Compel is appropriate and warranted under Rule 45(f). First, the Court finds it significant that IEEFA consents to the transfer of Diversified's Motion to the Northern District of West Virginia. As set forth above, under Rule 45(f), a court may transfer a motion to the issuing court "if the person subject to the subpoena consents **or** if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f) (emphasis added). The Advisory Committee Notes explain that "[t]he prime concern [in evaluating transfer under Rule 45(f)] should be avoiding burdens on local non-parties subject to subpoenas." Adv. Committee Notes to Fed. R. Civ. P. 45 (2013 Amendments).

Here, the "local non-party subject to the subpoena" (i.e., IEEFA) unequivocally consents to transfer and, indeed, has affirmatively requested that this Court transfer the instant action to the issuing court. Faced with similar circumstances, one district court has explained that this presents a situation "where the usual concerns of Rule 45(f) are turned on their head." *Mirza v. Yelp, Inc.*, 2021 WL 2939922 at * 3 (N.D. Cal. July 13, 2021). In that case, non-party Yelp filed a motion to transfer a subpoena back to the issuing court. The district court granted Yelp's motion, explaining as follows:

> Given that the primary purpose of resolving subpoena-related motions in the home district of non-parties is to protect them from the burden of challenging a subpoena in a remote location, **local non-party Yelp's Motion to Transfer vitiates the need for protection by Rule 45(f).** *See Moon Mountain Farms*, 301 F.R.D. at 430 (analyzing burdens placed on nonparty subpoena recipient because such burden should be "the primary focus in determining whether transfer is appropriate"). Any inconvenience

---

While it would have perhaps been better practice for counsel for IEEFA to have raised the issue of transfer during the parties' meet and confer, this was not expressly required by the Court's July 18, 2023 Order. Moreover, it is undisputed that the parties did, in fact, meet and confer by telephone on July 24, 2023, during which time they discussed the specific discovery concerns raised in Diversified's Motion to Compel. (Doc. No. 8.) This is sufficient to have satisfied the Court's Order. The Court also rejects Diversified's argument that IEEFA violated this Court's Order by filing a Motion to Transfer, rather than a Brief in Opposition to Diversified's Motion to Compel. This Court ordered that, if the parties were unable to resolve their discovery dispute, "IEEFA shall file a **response** to Diversified's Motion to Compel by no later than August 1, 2023." Non-Doc Order dated July 18, 2023. IEEFA's Motion to Transfer Venue constitutes a response to Diversified's Motion to Compel. Further, the Court finds that IEEFA's Motion to Transfer was not frivolous or filed in bad faith, as it raises compelling arguments in support of transfer.

Yelp may experience by having the Issuing Court resolve the Motion to Enforce Compliance – that is, any burden on Yelp that Rule 45 may have sought to alleviate – is clearly outweighed by Yelp's own wishes, as the instigator of this Motion to Transfer, to have it resolved there.

Rule 45(f) nowhere contemplates that parties seeking a subpoena can or would object to transfer back to the court where they originally filed suit, since they had presumably chosen their preferred jurisdiction in the first instance.  Hence, **Rule 45(f) presents no bar whatsoever to the return of the matter to the Issuing Court where the Subpoenaing Parties object to the transfer and the nonparties subject to the subpoena consent to the transfer – or, as here, when the nonparty proactively seeks that transfer. When, as here, the protection offered by the rule is unnecessary, "Rule 45(f) provides that the court where compliance is required may do so.**" Advisory Committee Notes.

Under these circumstances, Rule 45(f) presents no bar to transfer the Motion to Enforce compliance back to the Issuing Court, and Yelp's proactive consent to the transfer provides sufficient grounds for this Court to grant Yelp's Motion to Transfer.

*Id.* at * 3 (emphasis added) (footnotes omitted).

Other district courts have likewise found that a non-party's consent to transfer, standing alone, may provide sufficient grounds for transfer under Rule 45(f). *See, e.g., In re Daimler Truck North America, LLC,* 2023 WL 2456069 at * 2 (D. Del. March 10, 2023) ("DTNA has cited no authority supporting denial of a motion to transfer when the party subject to the subpoena consented to have the matter transferred to the issuing court. Therefore, LUSC 22-B's consent is sufficient to warrant transfer"); *Hall v. Marriott International, Inc*., 2021 WL 3129598 at * 2 (N.D. Cal. July 23, 2021) ("Drassinower's proactive consent to the transfer provides sufficient grounds for this Court to grant her motion to transfer"); *San Juan Cable LLC v. Dish Network LLC*, 2015 WL 500631 at * 1 (D. Colo. Jan. 23, 2015) ("Here, DISH has not only consented but has affirmatively requested transfer. Thus, the Court need not consider whether the case presents 'exceptional circumstances.'").

Second, even assuming *arguendo* that IEEFA's consent is not sufficient in and of itself to warrant transfer, the Court further finds that exceptional circumstances weigh in favor of transfer to

9

the Northern District of West Virginia. The *McEvoy* case has been pending in West Virginia for fourteen months. The Northern District of West Virginia has already addressed a number of discovery issues in that case, including disputes relating to the Sierra Club and McMahon Subpoenas. As discussed *supra*, the Sierra Club Subpoena and McMahon Subpoena were both served by Diversified and are virtually identical to the Subpoena served on IEEFA. The Northern District of West Virginia specifically addressed objections to those Subpoenas and issued Orders quashing both Subpoenas. In so doing, that court evaluated the relevance and proportionality of the very document requests at issue in Diversified's Motion to Compel herein. Moreover, through its management of the discovery process generally and rulings on no less than three motions to dismiss, the Northern District of West Virginia has developed a thorough understanding of the factual predicates implicated in *McEvoy,* which is, by all accounts, a complex class action matter.

"While, as a general matter, a Fed. R. Civ. P. 45 subpoena-related motion 'will always be resolved by a court less familiar with the underlying litigation,'" here, the Northern District of West Virginia's understanding of the issues implicated in this discovery dispute exceeds "mere 'familiarity.'" *Drips Holdings, LLC v. QuoteWizard.com LLC*, 2021 WL 1517919 at *6 (N.D. Ohio April 16, 2021). *See also Global Music Rights, LLC v. Saga Communications, Inc*., 2021 WL 4751184 at * 3 (N.D. Ohio October 8, 2021.) Over the last fourteen months, the Northern District of Western Virginia has "developed a deep and rigorous understanding of the issues implicated in this dispute," which weighs in favor of transfer. *Drips Holdings, LLC*, 2021 WL 15157919 at * 6 (citing *Parker Compound Bows, Inc*., 2015 WL 7308655 at *1).

The fact that the Northern District of Western Virginia has already quashed the Sierra Club and McMahon Subpoenas also weighs in favor of transfer because of the potential for inconsistent

rulings were this Court to rule on Diversified's Motion to Compel. Upon careful review, the Court notes that Documents Requests 1 through 11 of the Subpoena issued to IEEFA are identical to (1) Document Requests 1 through 5, and 8 through 13 of the Sierra Club Subpoena; and (2) Document Requests 1 through 11 of the McMahon Subpoena. *Compare* Doc. No. 1-2 at PageID#s 23 -24 *with* Doc. No. 9-3 at PageID#s 225-226 and Doc. No. 9-5 at PageID#s 257-258. In quashing the Sierra Club and McMahon Subpoenas, the Northern District of West Virginia expressly considered the issues of relevance and undue burden, both of which issues are raised by IEEFA in their Objections to Diversified's Subpoena (Doc. No. 9-1 at PageID#s 204-207.) Under these circumstances, the Court agrees with IEEFA that the risk of inconsistent rulings constitutes an exceptional circumstance warranting transfer. *See* Adv. Committee Notes, Fed. R. Civ. P. 45 (2013 Amendments) (noting that "transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion").

Diversified's arguments to the contrary are without merit. Diversified first argues that there is no risk of inconsistent rulings because, unlike IEEFA, neither the Sierra Club nor Mr. McMahon were "directly acknowledged for their involvement in the [Boettner] Report." (Doc. No. 11 at p. 8.) The Court disagrees. In its Objections to the Subpoena issued by Diversified, the Sierra Club argued that "whether the authors of the [Boettner] report have had any … contact [with the Sierra Club] has nothing at all to do with the issues in this case." (Doc. No. 9-2.) Additionally, in response to Diversified's requests for documents regarding "any of" Diversified's gas wells in West Virginia and/or "communications with any of the Plaintiffs" from July 2016 to the present, the Sierra Club objected on the grounds that "any documents or communications Sierra Club could have of this nature do not have any actual bearing on whether the defendants committed trespass, nuisance, or

11

negligence, or engaged in a fraudulent transfer." (*Id.*) The Northern District of West Virginia agreed with the Sierra Club, finding that "the requests by Diversified are not relevant to any of the issues in this case." (*Id.*) Diversified fails to explain why the Northern District of West Virginia's relevance analysis would be any different simply because the IEEFA was mentioned in the Acknowledgments section of the Boettner Report.

The Court also rejects Diversified's argument that there is no risk of inconsistent rulings because the Orders issued by the Northern District of West Virginia regarding the Sierra Club and McMahon Subpoenas are "void for want of jurisdiction." (Doc. No. 11 at p. 9.) Diversified raised this very issue in *McEvoy* and the Northern District of West Virginia rejected it. *See McEvoy*, Case No. 5:22cv171 (N.D. W. Va.) (Doc. Nos. 312, 317.) This Court will not question the Northern District of West Virginia's decision regarding its own jurisdiction.

Lastly, the Court rejects Diversified's argument that judicial economy would not be served by transfer because "[i]f this Court transfers the case and the Northern District of West Virginia 'orders further discovery, it is possible that retransfer may be important to enforce the order." (Doc. No. 11 at p. 5.) It is true that Rule 45(f) provides that, if a subpoena-related motion is transferred to the issuing court, the issuing court may transfer an order issued on such a motion to the court where the motion was made in order to "enforce its order." Fed. R. Civ. P. 45(f). As the Advisory Committee Notes explain:

> After transfer, the court where the action is pending will decide the motion. If the court rules that discovery is not justified, that should end the matter. If the court orders further discovery, it is possible that retransfer may be important to enforce the order. One consequence of failure to obey such an order is contempt, addressed in Rule 45(g). Rule 45(g) and Rule 37(b)(1) are both amended to provide that disobedience of an order enforcing a subpoena after transfer is contempt of the issuing court and the court where compliance is required under Rule 45(c). In some instances, however, there may be a question about whether the issuing court can impose contempt sanctions on

12

a distant nonparty. If such circumstances arise, or if it is better to supervise compliance in the court where compliance is required, the rule provides authority for retransfer for enforcement. Although changed circumstances may prompt a modification of such an order, it is not expected that the compliance court will reexamine the resolution of the underlying motion.

Adv. Committee Notes, Fed. R. Civ. P. 45 (2013 Amendments).  Here, however, there is no reason to believe that IEEFA will not comply with any Order issued by the Northern District of West Virginia. Indeed, IEEFA expressly states that it "will comply with any order issued from the [Northern District of West Virginia,] without the need for enforcement." (Doc. No. 12 at p. 7.)

In sum, the Court finds that exceptional circumstances warrant the transfer of Diversified's Motion to Compel to the Northern District of West Virginia.  Due to its rulings in *McEvoy* over the past fourteen months, that court has a deep understanding of the issues implicated by Diversified's Motion.  Transfer will also alleviate the risk of inconsistent rulings and best serve the interests of judicial economy. *See, e.g., F.T.C.*, 2013 WL 6388539 at * 3 (finding exceptional circumstances warranting transfer of subpoena-related motions to quash when transferring the matter was in "the interests of judicial economy and avoiding inconsistent results"); *Arclin USA, LLC v. Vits Technology GmbH*, 2020 WL 6882600 at * 2 (S.D. Ohio Nov. 24, 2020) ("Judicial economy will be best served by having all of these discovery disputes resolved by the same Court.").

IV.   **Conclusion**

Accordingly, and for all the foregoing reasons, IEEFA's Motion to Transfer (Doc. No. 9) is GRANTED.  Diversified's Motion to Compel (Doc. No. 1) is hereby transferred to the United States

13

District Court for the Northern District of West Virginia, as the issuing court in the matter of *McEvoy v. Diversified Energy Company, PLC,* Case No. 5:22CV00171- JPB (N.D. W.Va.)

    **IT IS SO ORDERED.**

Date: September 8, 2023

     *s/Pamela A. Barker*
    PAMELA A. BARKER
    U. S. DISTRICT JUDGE